**Emily S. Miller**, OSB #034348
E-mail: emiller@pfglaw.com
**Paul A. Mockford**, OSB #105729
E-mail: pmockford@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon  97205
Telephone:  (503) 222-1812
Facsimile:  (503) 274-7979

*Of Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DEBRA MATHEWS** | Case No. |
|     Plaintiff, | |
| | **COMPLAINT** |
| **v.** | |
| | **(ERISA Benefits, ERISA Equitable Relief, and ERISA Penalty for Failure to Provide Requested Documents; or, In the Alternative, Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing)** |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | |
|     Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.

Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(g), Plaintiff Debra Mathews

seeks disability insurance benefits, together with attorney fees and interest, under the group

disability insurance plan for employees of The Hasson Company ("Hasson").  Pursuant to 29

U.S.C. §§ 1132(a)(3) and 1132(g), Ms. Mathews also seeks equitable relief, attorney fees, and

interest against Unum Life Insurance Company of America ( "Unum"), for Unum's breaches of ERISA, its duties under the group disability insurance policy, and its fiduciary duties.  And, pursuant to 29 U.S.C. §§ 1132(c)(1) and 1132(g), Ms. Mathews seeks statutory damages and attorney fees for Unum's failure to provide requested documents Unum was obligated to furnish.

2.

Alternatively, to the extent ERISA does not apply, Ms. Mathews seeks damages and attorney fees for Unum's breach of contract and breach of the implied covenant of good faith and fair dealing.

**JURISDICTION AND VENUE**

3.

Jurisdiction is conferred on this court by ERISA, 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 1132(c)(1).

4.

Venue is proper pursuant to ERISA, 29 U.S.C. § 1132(e)(2), as Ms. Mathews was denied benefits in Gladstone, Oregon.

5.

To the extent ERISA does not apply, jurisdiction is conferred under 28 U.S.C. § 1332 based upon the complete diversity between the parties.  Ms. Mathews resides in Oregon and, upon information and belief, Unum is a Maine corporation with its principal place of business in Maine.  Ms. Mathews's complaint seeks damages, excluding costs and interest, in excess of the minimum amount in controversy required by 28 U.S.C. § 1332.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

6.

To the extent ERISA does not apply, personal jurisdiction exists and venue is proper because Unum transacted insurance in Oregon within the meaning of the Oregon Insurance Code, ORS 731.146, and because the claim giving rise to this lawsuit arose out of risks for which Unum provided coverage within Oregon and, specifically, Clackamas County.

## PARTIES

7.

At all times material to eligibility under Unum's group insurance policy, Ms. Mathews was employed by Hasson as a real estate agent and was an insured and a participant under the Policy. Ms. Mathews resided in Gladstone, Oregon, when her disability commenced and when Unum terminated her benefits. She moved to Redmond, Oregon in August 2016.

8.

Defendant Unum issued Group Insurance Policy No. 148127 001 ("the Policy"), which sets forth the terms controlling Ms. Mathews's entitlement to disability insurance benefits. The Policy provides that Unum "will provide benefits under this policy" and that the Policy is "governed by the laws of the governing jurisdiction and to the extent applicable by [ERISA] and any amendments." The Policy further provides that "[i]f this policy provides benefits under a Plan which is subject to [ERISA]" certain provisions apply, including that "[t]he Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan" and that Unum is the "claims fiduciary for the Plan." The copy of the Policy Unum provided does not identify a "Plan," "Plan Administrator," or Plan Sponsor. Unum is authorized to conduct business in Oregon.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

**STATEMENT OF FACTS**

*OVERVIEW OF POLICY*

9.

If Ms. Mathews qualifies for disability benefits, the Policy provides a monthly benefit of

$5,152.51.

10.

The Policy defines disability in relevant part as follows:

You are disabled when Unum determines that:

- You are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

- You have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

\* \* \*

You must be under the regular care of a physician in order to be considered disabled.

\* \* \*

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

(emphasis in original).

11.

The Policy defines the relevant terms bolded above as follows:

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the plan.

\* \* \*

**LIMITED** means what you cannot or are unable to do.

**MATERIAL AND SUBSTANIAL DUTIES** means duties that:

- Are normally required for the performance of your regular occupation; and
- Cannot be reasonably omitted or modified.

Page - 4  COMPLAINT
O:\10173001\0023a pam complaint.doc

* * *

**REGULAR OCCUPATION** means the occupation you are routinely performing
when your disability begins.  Unum will look at your occupation as it is normally
performed in the national economy, instead of how the work tasks are performed
for a specific employer or at a specific location.

* * *

**SICKNESS** means an illness or disease.  Disability must begin while you are
covered under the plan.

(emphasis in original).

12.

The Policy also provides a "Return to Work Assistance Program," which includes
a "vocational evaluation to determine how your disability may impact your employment
options," and a "worksite modification" benefit, under which a designated professional
will "identify a modification [Unum] agree[s] is likely to help you remain at work or
return to work."

*OVERVIEW OF DISABLING CONDITION AND PLAN TO RETURN TO WORK*

13.

At age 59, Ms. Mathews has had a successful and fulfilling career as a real estate agent
for 23 years.  She has been a top producing realtor for two decades, winning accolades and
awards in the process.  She is a self-described workaholic.

14.

The recent recession brought with it tremendous stress on Ms. Mathews—financial and
psychological.  She was tasked with working even harder to make the same or less money and
undertook that challenge with the same discipline and dedication that she learned in her youth
from her parents and extended family.  While this discipline and dedication allowed her to
survive the recent recession and still maintain a successful real estate career, the cumulative

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

effect of that stress over several years ultimately peaked in December of 2015 and rendered her psychologically paralyzed.

15.

Ms. Mathews began suffering from heart palpitations, panic attacks, and insomnia forcing her to consider a leave of absence. She closed her doors to new work and began transitioning existing clients to colleagues, counter to every instinct she had.

16.

In January of 2016, Ms. Mathews sought help from her long-time primary care physician, Dr. Marjorie Hrbek, M.D. Dr. Hrbek diagnosed Ms. Mathews with reactive depression due to stress and insomnia. As Dr. Hrbek writes in her notes, Ms. Mathews was "psychologically paralyzed," "on the verge of a psychological breakdown," and "positively overwhelmed."

17.

Ms. Mathews's depression stripped her of motivation and focus, leaving her excessively fatigued and overly emotional. According to Dr. Hrbek, Ms. Mathews was "unable to concentrate," "unable to multi-task," "unable to control emotions," and "unable to participate in a full 8 hour workday" due to reactive depression, stress, and insomnia. All of these abilities are essential for her profession.

18.

Dr. Hrbek supported Ms. Mathews's decision to take a leave of absence. Dr. Hrbek also recommended that Ms. Mathews either undergo counseling or take an anti-depressant. Ms. Mathews preferred to try counseling first, to get to the root of her depression, and began counseling with Lisa Race MSW, LCSW, on February 11, 2016.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

19.

Ms. Race diagnosed Ms. Mathews with "[m]ajor depressive disorder," observing that Ms. Mathews was "[p]resenting" the following "[p]roblems": "Difficulties with sleep, inability to concentrate, high level of fatigue, feeling guilty. Feeling extremely stressed. Symptoms impair Debra's ability to work and manage stress of her job."

20.

Both Dr. Hrbek and Ms. Race expected that Ms. Mathews would require a leave of absence to fully recover from her reactive depression and to position herself to safely return to work without a foreseeable risk of relapse.

21.

Ms. Mathews, however, hoped to return sooner. After she came to terms with taking a leave of absence, she almost immediately began to plan for how she might be able to get back to work. But since her current position had already rendered her psychologically paralyzed and disabled with reactive depression, this required a solution that could be sustained and that would not leave her prone to recurrent relapses of reactive depression.

22.

After, and as a result of, the inception of her psychological paralysis and disability with reactive depression, Ms. Mathews began to consider transitioning back to a more managerial role within a real estate brokerage team, which would allow her to dramatically reduce her stress while still continuing her exemplary career in real estate.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

23.

In August 2016, Ms. Mathews moved from Portland, Oregon, to Redmond Oregon for the purpose of reducing her stress.  There, she unsuccessfully attempted to reenter her profession over the next 11 months.  Her efforts took a toll, exacerbating her recurring symptoms.

24.

In December 2016, Ms. Mathews had a severe atrial fibrillation attack and was admitted to the cardiac intensive care unit at St. Charles Medical Center in Redmond for three days.

25.

In July 2017, Ms. Matthews took a cortisol test that showed elevated and abnormal cortisol levels consistent with excessive stress, depression, and anxiety.

26.

Ms. Mathews finally accepted that she no longer had the emotional, physical, or mental capacity for the demands of her job.  On July 24, 2017, she called Hasson's president and agreed to remain on an official leave of absence.

*OVERVIEW OF CLAIM INVESTIGATION AND DECISION*

27.

Unum agreed that Ms. Mathews was disabled by her condition as of January 22, 2016, the date of Ms. Mathews's first meeting with Dr. Hrbek.  However, by letter dated May 24, 2016, Unum determined that Ms. Mathews ***should*** no longer be disabled as of June 1, 2016, and prospectively terminated her benefits as of that date.  The June 1 termination date is arbitrary and does not correlate to any evidence in the record.  A Unum office staff physician—who never met Ms. Mathews—speculated on May 17, 2016 that Ms. Mathews's condition ***should*** prospectively and completely resolve within two weeks of his report.  Ultimately, after applying a 90-day

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

"elimination period" to Ms. Mathews's claim, Unum paid Ms. Mathews only $7,213.51 in

benefits, even though Ms. Mathews has been disabled for almost two years.

*The Claim Submission and Unum's Initial Findings*

28.

Unum recognized Ms. Mathews's disability as early as February 24, 2016. A claim file

notation that day noted her "reactive depression due to stress and insomnia – certified by internal

medicine AP Dr. Hrbek" and that "[restrictions and limitations] are noted to be unable to

concentrate, unable to multi-task, unable to control emotions, and unable to work an 8 hour day."

29.

Unum's vocational representative reviewed the file and confirmed the next day that Ms.

Mathews's occupation requires her to concentrate, multi-task, and control her emotions. This

analysis of Ms. Mathews's occupation, as compared to the restrictions and limitations noted by

Dr. Hrbek, should have been the focus of Unum's review: Ms. Mathews was unable to meet the

requisite concentration, multi-tasking, and emotional control needed for her occupation.

*Unum's Director's Intervention Into the Claim File*

30.

However, Unum's investigation took a misguided turn when Unum's Director, Angel

Avila, entered a notation in the claim file that blatantly mischaracterized Dr. Hrbek's treatment

notes. In Mr. Avila's February 25, 2016 claim note, he acknowledged Dr. Hrbek's observations

that Ms. Mathews is "at a breaking point" and is "psychologically paralyzed," but Mr. Avila

concluded that Dr. Hrbek "suggested that [Ms. Mathews] is wanting to make lifestyle changes,

***rather than*** having functional loss due to her reactive depression." (Emphasis added.) This

conclusion was wholly and completely unsupported by Dr. Hrbek's treatment notes, which, even

as summarized Mr. Avila, describe that Ms. Mathews's consideration of a position change came *after* she was diagnosed with reactive depression and disability. Mr. Avila's baseless claim note inserted bias into an ongoing investigation and, coming from Unum's director, dictated the course of this claim.

*Unum's Biased Internet Search*

31.

On February 25, 2016, just minutes after Mr. Avila introduced his unsupported theory into the claim notes, Unum requested a detailed internet search, seeking *only* information that would support Mr. Avila's theory: information "to link what may have been lifestyle choice rather than disabling depression to her noted activity online." This internet search demonstrates that Unum was not interested in gathering a complete view of Ms. Mathews's online activity, a clear manifestation of bias.

*Ms. Mathews's Further Proof of Her Disability*

32.

On March 1, 2016, at the beginning of the claim investigation, Unum interviewed Ms. Mathews over the phone and pointedly asked about the chronology of her disability: "Was your [attending physician] providing you with any [restrictions and limitation] prior to your [last day of work]?" According to Unum's claim notes, Ms. Mathews explained that she did not seek Dr. Hrbek's help immediately because, while she knew "things were falling apart," "she didn't really understand what was happening."

33.

Unum's notes described the day that it "hit home" for Ms. Mathews in late November as follows: "she was driving to her office and she was so exhausted she pulled over and fell asleep

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

and she woke up and said to self she was losing her mind and so she just went home and slept for

12 hours she didn't cancel her appts or anything she just went home and slept – everyone

panicked since this is very out of character for her – she just couldn't handle her job any more –

was confused and exhausted and couldn't stay organized – constantly worried and irritable and

stressed about everything – she started having panic attacks  which she hasn't had before * * *."

34.

Unum noted further that, at that point, Ms. Mathews "was not contacting her clients and

was passing off work to her coworkers" and then, in December, had planned a vacation with her

family—"the first time in years"—but "was just a mess she couldn't disconnect from the stress

of what was happening at work or connect with her family (claimant took a minute started to

cry)[;] she was completely shut down and incapacitated."  As summarized by Unum, Ms.

Mathews tried to "hop back on the wheel * * * but she couldn't pull herself out of it."  That and

the onset of heart palpitations and panic attacks prompted her to go see Dr. Hrbek.

35.

During the March 1, 2016 interview, Unum and Ms. Mathews also discussed her

preference to avoid medication, if possible, even if that requires a change in her professional

position.  Unum noted that Ms. Mathews "has some options that would allow her to stay in the

same profession but not the same work capacity and that is one of the things she is exploring

with the counselor – *part of her healing is that she needs to have a plan* * * *."  (Emphasis

added.)

36.

On March 15, 2016, Ms. Mathews's counselor, Ms. Race, submitted a provider proof of

loss form in which she opined that Ms. Mathews "should not participate in high stress, time

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

sensitive work related tasks."  Ms. Race's opinion was consistent with Dr. Hrbek's opinion that

Ms. Mathews was "unable to concentrate," "unable to multi-task," "unable to control emotions,"

and "unable to participate in a full 8 hour workday" due to reactive depression, stress, and

insomnia.  At all times, Ms. Mathews's attending medical providers have consistently concurred

in the opinion that Ms. Mathews is unable to work in her occupation at this time.

37.

But, despite all of the above information that soundly confirms Ms. Mathews's disability,

Unum's representatives continued to follow Mr. Avila's speculative and baseless theory that Ms.

Mathews was "dealing with lifestyle changes rather than severity of symptoms due to reactive

depression."

*Unum's Unnecessary Request for, and Subsequent Disregard of, Information Regarding*
*the Duties of Ms. Mathews's Occupation in the National Economy*

38.

Even though Unum's vocational representative had confirmed back on February 25, 2016

that Ms. Mathews's position as a real estate agent required concentration and attention, multi-

tasking, and ability to control emotions—which Dr. Hrbek and Ms. Race had already found she

lacked—Unum internally requested an "Occ ID" on April 1, 2016, to confirm the substantial and

material duties of a real estate agent.  Unum made this request after an internal discussion that

included Mr. Avila and again revisited his baseless theory that Ms. Mathews was "dealing with

lifestyle changes rather than severity of symptoms due to reactive depression."

39.

Unum undertook this "Occ ID" on April 5, 2016, and confirmed that a real estate agent is

required to "deal[] with people," "influenc[e] people in their opinions," "mak[e] judgments and

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

decisions," and perform a number of specific material and substantial duties requiring

concentration and attention, multi-tasking, and ability to control emotions:

- Solicit[ing] real estate services from property owners in order to obtain new listings.
- Check[ing] property listings to become familiar with properties for sale.
- Accompan[ying] prospects to property sites, quotes purchase price, describes features, and discusses conditions of sale or terms of lease.
- Draw[ing] up real estate contracts, such as deeds, leases, and mortgages.
- Review[ing] trade journals and attends staff and association meetings to keep informed of marketing conditions, property values, and legislation that would affect real estate industry.
- Interview[ing] prospective client to solicit listings

*  *  *

- May negotiate loans on property.
- May hold broker's license.
- May assist buyer and seller in obtaining pertinent information or services, such as finance, maintenance, repair, or obtaining an appraisal.
- May obtain pictures and measurements of rooms, doors, windows or any other specified areas for inclusion in newspaper advertisement and real estate booklets listing description of property.
- May inspect property to determine if repairs are need and notify owner.
- May conduct seminars and training sessions for sales agents to improve sales techniques.
- May prepare closing statements, oversee signing of real estate documents, disburse funds, and coordinate closing activities.

40.

To this day, Unum still has not analyzed whether Ms. Mathews is able to perform these

material and substantial duties, as specifically identified in this "Occ ID."

*Unum's First Biased Clinical Review*

41.

Not finding what it wanted in the "Occ ID," Unum turned to a Clinical Review by Senior

Clinical Consultant, Jessie Anderson, RN.  The improperly narrow, "yes" or "no" question

presented to her was:  "Does available medical document [restrictions and limitations] that

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

would impair [Ms. Mathews's] ability to perform occ duties of Realtor (as defined by VRC) on a full-time basis beginning 12/1/2015?"

42.

Ms. Anderson never examined Ms. Mathews.  She answered "no" anyway, concluding that Ms. Mathews was not disabled beginning on December 1, 2015 based on the fact that Ms. Mathews did not seek treatment until January 22, 2016 and purportedly showed "improvement during the follow up visit" with Dr. Hrbek on January 29, 2016.  These cherry-picked facts are misleading and inapposite to Ms. Mathews's restrictions and limitations:

- At most, the fact that Ms. Mathews was not treated before January 22, 2016 could only push the commencement date back to January 22.

- Ms. Anderson's own notes evidence symptoms Ms. Mathews suffered from prior to January 22, recognizing "an insidious change" she had suffered since "October/November" and that Ms. Mathews "finally" went to see Dr. Hrbek in January "due to heart palpitations and panic attacks."

- Dr. Hrbek concluded during the January 29, 2016 visit that Ms. Mathews was "psychologically paralyzed."

*Unum's Second Biased Clinical Review*

43.

On April 15, 2016, Unum referred the claim to an office staff physician for review.  It was this physician, Dr. McLaren, who concluded on May 17, 2016 that psychiatric restrictions and limitations were "supported" up until June 1, 2016 but not "beyond."

44.

Dr. McLaren disagreed with Ms. Anderson, explaining that "[t]he clinical records are consistent between both the [primary care physician] and psychotherapist indicating the insured as manifesting psychiatric symptoms which would impact her capacity to work the duties of her occupation."

Page - 14  COMPLAINT
O:\10173001\0023a pam complaint.doc

45.

However, Dr. McLaren speculated that Ms. Mathews "would be expected to" recover by

June 1, 2016, a date that correlated to absolutely nothing.

46.

At no point did Dr. McLaren personally examine Ms. Mathews.

47.

Dr. McLaren did talk to Dr. Hrbek; however, according to his notes, Dr. Hrbek "did not

judge the insured as able to work at this point"—by then May 3, 2016—and that, "[r]egarding

her estimation of duration/prognosis," Dr. Hrbek stated:

> [T]he insured would likely never return to that profession, and would be looking
> into doing something else, yet not as a realtor. Duration could not be estimated
> by the [Attending Physician], yet stated as when she is able to "get healthy."

48.

Dr. McLaren also talked to Ms. Race; however, according to his notes, Ms. Race's

opinions had not changed.

49.

Nothing in the medical records or any other factual information correlates to the June 1,

2016 termination date, less than a month after Dr. Hrbek told him the recovery timeline "could

not be estimated."

50.

Dr. McLaren failed to consider the substantial and material duties of a real estate agent in

the national economy, as identified in the claim file.

Page - 15  COMPLAINT
O:\10173001\0023a pam complaint.doc

51.

Dr. McLaren also unfairly criticized Ms. Mathews for failing to provide evidence that she

"would lack the capacity to work in her occupation beyond 6/1/16." Had Dr. McLaren requested

evidence of disability in June 2016, Ms. Mathews would have gladly provided it.

*Unum's Biased Designated Medical Officer Review*

52.

On May 18, 2016, Unum's Designated Medical Officer, Dr. Stuart Shipko, completed his

"DMO review" of Dr. McLaren's opinion. Dr. Shipko went one step further than Dr. McLaren,

stating that he did "not find support for impairing psychiatric illness at any time during this

claim." Dr. Shipko did not apply the substantial and material duties of a real estate agent to Ms.

Mathews's limitations, instead continuing the same bias started by Mr. Avila in the claim file by:

- Cherry-picking Dr. Hrbek's reference to Ms. Mathews's "difficult personal choice to downsize" without mentioning that Dr. Hrbek's records also clearly reflect that the decision came *after* she was disabled by reactive depression and as part of her return to work plan.

- Misrepresenting that "[t]he reported impairing symptoms related to inability to concentrate, multi-task, control her emotions are not a focus of evaluation or treatment by Dr. Hrbek or Ms. Race." Dr. Hrbek's office notes from January 22 and 29, 2017 contain entire paragraphs addressing Ms. Mathews's "Depression" and "Reactive Depression" under the heading "ASSESSMENT/PLAN." Ms. Race's "Diagnosis and Treatment Plan" diagnoses "Major depressive disorder" and specifically notes that Ms. Mathews was "[p]resenting" with: "[I]nability to concentrate, high level of fatigue, feeling guilty. Feeling extremely stressed. Symptoms impair Debra's ability to work and manage stress of her job."

- Criticizing Ms. Race for not documenting specific examinations, even though such examinations were freely available to Unum through an independent medical examination. To the extent these examinations were necessary for Unum's claim investigation, Unum was required to obtain them through an independent medical examination or at least notify Ms. Mathews of their importance.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

*Unum's Biased, Arbitrary, and Capricious Denial of Benefits*

53.

In a May 24, 2016 letter, Unum made its claim determination based on Dr. McLaren's speculative opinion, deciding that Ms. Mathews's restrictions and limitations began on January 29, 2016 but "are not supported beyond June 01, 2016." At this point in time Unum had not interviewed Ms. Mathews since March 2016 and had not obtained any medical records post-dating March 2016.

*Ms. Mathews's Appeal and Unum's Biased, Arbitrary, and Capricious Affirmance*

54.

Ms. Mathews internally appealed Unum's decision on October 24, 2016.

55.

After suffering her severe atrial fibrillation attack in December 2016, Ms. Mathews notified Unum of her attack and three-day admission to the cardiac intensive care unit at St. Charles Medical Center.

56.

Unum affirmed its denial on January 12, 2017, but only after collecting new medical records post-dating March 2016. This was a tacit admission that the initial termination was insupportable. The only way for Unum to affirm its prior decision was to open a new investigation, without affording Ms. Mathews the opportunity to submit records from this period.

57.

Unum's January 12, 2017 affirmance was incorrect, arbitrary and capricious because it:

- Relied in great part on the assertion that Ms. Mathews's medical records purportedly documented unspecified but "significant" improvement. Unspecified "improvement" does not establish that the disability is resolved. Further, the only place "improvement"

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

of any kind is documented is in Dr. Hrbek's January 29, 2016 office visit notes, which is during a time that Unum admits that Ms. Mathews was disabled.

- Improperly used Ms. Mathews's preference to avoid precriptive medication against her. Nothing in the Policy requires the use of prescriptive medication to receive disability benefits.

- Improperly speculated as to the reason for the purported "low" frequency of psychotherapy. Having moved to Redmond Oregon, Ms. Mathews had to commute more than three hours to appointments, through historically severe weather conditions during the winter of 2016–2017, eventually requiring her to switch mental health providers.

- Improperly based a denial of disability benefits on a disagreement with Ms. Mathews's treatment plan.

- Improperly disregarded subjective evidence and improperly required objective evidence.

58.

Unum refused to request the medical records of atrial fibrillation in the heart caused by stress, or to speak with those attending providers. Even though this recent heart condition was diagnosed as stress-related and is direct, physical evidence of continuing and disabling anxiety, Unum outright dismissed this more recent development as a completely new and separate incident purportedly having nothing to do with the disability Unum agreed Ms. Mathews's suffered up until June 1, 2016. Unum had no reasonable basis for refusing to consider this evidence.

*Unum's "Re-appeal"*

59.

Unum notified Ms. Matthews in a letter dated April 20, 2017 that Unum had unilaterally "referred Ms. Matthews's claim back to the appeal department for a re-appeal review." Unum's letter stated that Unum's decision "remains as communicated" in its initial decision letter and appeal decision letter, but Unum was conducting the re-appeal "in the interest of customer service."

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

60.

Unum assigned the "re-appeal" to the same person who authored Unum's January 12, 2017 letter affirming Unum's June 1, 2016 termination of Ms. Mathews's benefits, placing this individual, Karen Connolly, in a clear conflict of interest.

61.

Unum's April 20, 2017 letter indicated that Ms. Mathews may submit "additional new information she wishes to provide in support of her benefits beyond June 1, 2016," after which the claim file will be "referred for an independent medical evaluation and opinion of her records, by a physician who is qualified to review mental health conditions."

62.

Ms. Matthews submitted additional information on July 28, 2017 but the promised independent medical evaluation still has not been completed.

*UNUM'S ARBITRARY AND CAPRICIOUS DENIALS*

63.

Unum arbitrarily and capriciously denied Ms. Mathews benefits after June 1, 2016, by engaging in conduct including, but not limited to:

(1)    Conducting a biased investigation based on Mr. Avila's speculative "life choice" theory.

(2)    Cherry-picking single facts out of entire narrative and focusing on those facts to the exclusion of others.

(3)    Misrepresenting provider notes.

(4)    Placing the burden on Ms. Mathews to justify her eligibility to benefits by failing to take affirmative steps to obtain information it believed is needed to substantiate Ms. Mathews's restrictions and limitations.

(5)    Failing to apply the national standard for real estate agent duties after identifying the standard.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

(6)    Adopting Dr. McLaren's opinion despite its obvious lack of any factual foundation for why he believed anything had or would change as of June 1, 2016.

(7)    Assuming that the disability would prospectively resolve by a certain date without any foundation, factual or otherwise, for that assumption.

(8)    Deciding on May 24, 2016 that the disability would prospectively resolve even though Unum had no medical records or other factual information post-dating March 2016.

(9)    Providing disability benefits for the period in which Dr. McLaren believed depression should resolve, instead of when depression actually resolves.

(10)    Faulting Ms. Mathews for not providing proof in May of prospective disability in June without notifying Ms. Mathews that this proof was needed to perfect her claim.

(11)    Faulting Ms. Race for not providing more detailed notes and mental status examinations, when such items are not required and, again, without notifying Ms. Mathews that these notes and examinations were needed to perfect her claim.

(12)    Improperly relying on an exclusively paper review rather than scheduling an independent medical examination when Unum's medical reviewers disagreed with Ms. Mathews's treating provider.

64.

Unum arbitrarily and capriciously upheld its incorrect denial of benefits after June 1,

2016 through conduct including, but not limited to:

(1)    Failing to correct the biases/misrepresentations displayed in the prior decision.

(2)    Opening a new investigation without advising the insured as to what information could be provided in order to perfect the claim.

(3)    Improperly requiring objective evidence and disregarding subjective evidence by stating that "no evidence" exists when subjective evidence clearly exists.

(4)    Disagreeing with and discounting the opinion of treating providers without a clear explanation of its basis for doing so.

(5)    Continuing to cherry-pick single facts out of the entire narrative and focusing on those facts to exclusion of others.

(6)    Continuing to misrepresent provider notes.

(7)    Failing to take affirmative steps to obtain information Unum believed was needed to substantiate the limitations.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

(8)    Continuing to rely on the arbitrary and unsupported June 1, 2016 recovery date.

(9)    Relying on unspecified improvement to speculate that Ms. Mathews's disability had resolved.

(10)   Faulting Ms. Mathews for trying to avoid using prescriptive medication.

(11)   Finding more recent medical records lacking in substantiation without calling the providers for clarification.

(12)   Outright rejecting Ms. Mathews's more recent heart hospitalization as objective proof of continued mental health distress without reviewing or considering any records or information.

*UNUM'S FAILURE TO PROVIDE REQUESTED DOCUMENTS*

65.

On June 3, 2016, Ms. Mathews requested a full copy of her claim file, "including any and all information relied upon by UNUM in reaching its decision as indicated in the letter [Ms. Mathews] received, May 24, 2016."

66.

Unum provided Ms. Mathews with its claim file on a CD enclosed with Unum's letter dated June 14, 2016.  The claim file Unum provided contains an incomplete copy of the Policy, missing any identification of the plan, plan administrator, or plan sponsor.

67.

Having exercised reasonable diligence, Ms. Mathews has been unable to locate any documentation of the plan, plan administrator, and plan sponsor and has therefore alleged alternative claims applicable to the extent ERISA does not apply to this matter.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

## FIRST CLAIM FOR RELIEF

### (ERISA BENEFITS)

68.

Ms. Mathews realleges and incorporates herein by reference paragraphs 1 through 67, inclusive, as though fully set forth herein.

69.

29 U.S.C. § 1132(a)(1)(B) authorizes Ms. Mathews to recover benefits due under the terms of the Policy and to enforce her rights under the terms of the Policy.

70.

Ms. Mathews has been "disabled" under the terms of the Policy since at least December 2016, having been "limited" from performing the "**material and substantial duties**" of her "**regular occupation**" during this period due to her "**sickness**" or "**injury**." (Emphasis in original.)

71.

By denying Ms. Mathews payment of benefits under the Policy, Unum breached the Policy, in violation of ERISA.

72.

The Policy's attempt to delegate "discretionary authority" to Unum violates Or. Admin. R. 836-010-0026.  Unum is not entitled to any deference in its interpretation or application of plan terms or its factual determinations.  Thus, while Unum's denial was arbitrary and capricious, any such showing is not necessary for Ms. Mathews to recover under the Policy.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

73.

Unum's denial of benefits due after June 1, 2016, and subsequent affirmance of that denial was incorrect, arbitrary, and capricious for the reasons set forth above.

74.

Unum's violation of ERISA and the Policy and incorrect, arbitrary, and capricious denials damaged Ms. Mathews in an amount to be proven at trial, but not less than $92,745.18.

75.

Ms. Mathews is entitled to her reasonable attorney fees incurred herein pursuant to 29 U.S.C. § 1132(g)(1).

## SECOND CLAIM FOR RELIEF

## (ERISA EQUITABLE RELIEF)

76.

Ms. Mathews realleges and incorporates herein by reference paragraphs 1 through 75, inclusive, as though fully set forth herein.

77.

29 U.S.C. § 1132(a)(3) authorizes Ms. Mathews to obtain "appropriate equitable relief" to redress "any act or practice which violates any provision of this subchapter or the terms of the plan" and "to enforce any provisions of this subchapter or the terms of the plan."

78.

The Policy provides that Unum is the "claims fiduciary for the Plan," requiring Unum to discharge its duties with respect to the "Plan" "solely in the interest of the participants and beneficiaries" and with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1).

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

79.

The Policy delegates to Unum the duty to "make benefit determinations under the Plan," "resolv[e] factual disputes," and "interpret[] and enforc[e] the provisions of the Plan." The Policy provides further that "[a]ll benefit determinations must be reasonable."

80.

For reasons including, but not limited to, the particulars set forth above, Unum's decisions to deny benefits due after June 1, 2016 and affirm that denial on appeal were made in bad faith, unreasonably, recklessly, and/or without exercising reasonable care, violating ERISA, the terms of the Policy, and Unum's fiduciary responsibilities.

81.

At 29 U.S.C. § 1133, ERISA requires that every insurer shall "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and such insurer shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

82.

At 29 C.F.R. § 2560.503-l(g), ERISA's regulations provide that in addition to identifying the "specific reason or reasons for the adverse determination," the insurer must also provide the insured with a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

83.

Under 29 C.F.R. § 2560.503-1(h), the internal appellate review should "not afford deference to the initial adverse benefit determination."

84.

Pursuant to 29 C.F.R. § 2560.503-1(h), "the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures" provide claimants "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits" and provide for "a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."

85.

For reasons including, but not limited to, the particulars set forth above, Unum's handling of Ms. Mathews's claim and Ms. Mathews's appeal violated ERISA, the Policy, and Unum's fiduciary duties, including the minimum standards set forth in 29 U.S.C. § 1133 and 29 C.F.R. §§ 2560.503-l(g) and (h).

86.

As a foreseeable and direct consequence of Unum's violations of ERISA, the Policy, and Unum's fiduciary duties, Ms. Mathews was denied a fair review of her claim and her appeal, including the opportunity to submit post-March 2016 evidence as part of Unum's new investigation on internal appeal, and was damaged in an amount to be proven at trial, but not less

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

than the $7,149.58 in costs incurred in the course of the appeal that would otherwise have been unnecessary.

87.

Ms. Mathews is entitled to her reasonable attorney fees incurred herein pursuant to 29 U.S.C. § 1132(g)(1).

**THIRD CLAIM FOR RELIEF**

**(ERISA REQUEST FOR INFORMATION)**

88.

Ms. Mathews realleges and incorporates herein by reference paragraphs 1 through 87, inclusive, as though fully set forth herein.

89.

Pursuant to 29 U.S.C. § 1024(b)(4), Unum "shall, upon written request of any participant or beneficiary, furnish a copy of * * * [the] contract[s] or other instruments under which the plan is established or operated."

90.

Pursuant to 29 U.S.C. § 1132(a)(1) and (c), Ms. Mathews seeks a statutory penalty for Unum's failure to comply with her request for information alleged in paragraph 65 above.

91.

In the course of engaging in an unreasonable claims investigation, determination and review process, Unum failed to comply with the above-alleged request for information.

Page - 26  COMPLAINT
O:\10173001\0023a pam complaint.doc

92.

Ms. Mathews is statutorily entitled to $110 per each day from July 3, 2016 that Unum

fails to provide the requested information (approximately $55,550.00 as of the date of this

complaint).

93.

Ms. Mathews is entitled to reasonable attorney fees and costs incurred herein pursuant to

29 U.S.C. § 1132(g)(1).

## FOURTH CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

94.

To the extent ERISA does not apply, Ms. Mathews alleges as follows and realleges and

incorporates herein by reference paragraphs 1 through 93, inclusive, as though fully set forth

herein.

95.

Unum has a contractual duty to pay Ms. Mathews disability benefits pursuant to the terms

of the Policy, including benefits for the period from June 1, 2016 to present.

96.

Ms. Mathews has fully performed and/or satisfied all obligations and conditions

precedent required by the Policy, except any that were waived and/or excused by Unum, or as to

which performance was prevented or no longer required due to Unum's conduct.

97.

Unum breached its contractual duty to Ms. Mathews by terminating her disability

benefits on June 1, 2016.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

98.

As a result of the contractual breach by Unum, Ms. Mathews has been damaged in an amount to be proven at trial, but not less than $92,745.18.

99.

Pursuant to ORS 742.061, Ms. Mathews is also entitled to an award of her attorneys' fees, costs, and disbursements incurred as a result of Unum's denial and in bringing this action, as well as prejudgment interest at 9% per annum on all of her damages from the date incurred until the date judgment is entered.

## FIFTH CAUSE OF ACTION

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

100.

To the extent ERISA does not apply, Ms. Mathews alleges as follows and realleges and incorporates herein by reference paragraphs 1 through 99, inclusive, as though fully set forth herein.

101.

The Policy contains an implied covenant of good faith and fair dealing owed by Unum to Ms. Mathews. Pursuant to this covenant, Unum was under an obligation to promptly and fairly investigate disability claims and communicate with its insured in good faith.

102.

Through conduct including the particulars set forth above, Unum failed and refused to promptly and fairly investigate Ms. Mathews's claim and communicate with its insured in good faith. Accordingly, Unum has breached the implied covenant of good faith and fair dealing.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

103.

Ms. Mathews has fully performed and/or satisfied all obligations and conditions

precedent required by the Policy, except any that were waived and/or excused by Unum, or as to

which performance was prevented or no longer required due to Unum's conduct.

104.

As a direct and consequential result of Unum's breach, Ms. Mathews has sustained

substantial actual damages, consequential damages, and out-of-pocket expenses, including, but

not limited to the cost of appealing Unum's unreasonable denial, and other economic losses, all

in a sum to be shown by proof at trial, but not less than $7,149.58.

105.

Pursuant to ORS 742.061 Ms. Mathews is entitled to an award of her attorneys' fees,

costs, and disbursements incurred as a result of Unum's breach and in bringing this action, as

well as prejudgment interest at 9% per annum on all of her damages from the date incurred until

the date judgment is entered.

### JURY DEMAND

Ms. Mathews hereby demands trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Mathews prays for judgment against Unum as follows:

On Plaintiff's First Claim for Relief:

1.      Principal damages for benefits due in an amount to be proven at trial but not less

than $92,745.18;

2.      Pre-judgment and post-judgment interest;

3.      Reasonable attorney fees;

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

4.      All costs and disbursements; and

5.      Such other relief as the Court deems just and equitable.

On Plaintiff's Second Claim for Relief:

1.      A ruling that the record on internal appeal is reformed to include all documents

        Ms. Mathews submitted in the course of Unum's "re-appeal."

2.      Principal damages and restitution in an amount to be proven at trial but not less

        than $7,149.58;

3.      Pre-judgment and post-judgment interest;

4.      Reasonable attorney fees;

5.      All costs and disbursements; and

6.      Such other relief as the Court deems just and equitable.

On Plaintiff's Third Claim for Relief:

1.      Principal damages in the amount of $110 per each day from July 3, 2016, until

        Ms. Mathews's outstanding request for information is satisfied;

2.      Pre-judgment and post-judgment interest;

3.      Reasonable attorney fees;

4.      All costs and disbursements; and

5.      Such other relief as the Court deems just and equitable.

On Plaintiff's Fourth Claim for Relief, in the Alternative to Plaintiff's First, Second and
Third Claims for Relief:

1.      Principal damages in an amount to be proven at trial but not less than $92,745.18;

2.      Pre-judgment and post-judgment interest;

3.      Reasonable attorney fees;

4.      All costs and disbursements; and

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979

5.      Such other relief as the Court deems just and equitable.

On Plaintiff's Fifth Claim for Relief, in the Alternative to Plaintiff's First, Second and Third Claims for Relief:

1.      Principal damages in an amount to be proven at trial but not less than $7,149.58;

2.      Pre-judgment and post-judgment interest;

3.      Reasonable attorney fees;

4.      All costs and disbursements; and

5.      Such other relief as the Court deems just and equitable.

DATED this 21st day of November, 2017.

PARSONS FARNELL & GREIN, LLP


By:    s/ Paul A. Mockford
          Emily S. Miller, OSB #034348
          E-Mail: emiller@pfglaw.com
          Paul A. Mockford, OSB #105729
          E-mail Address: pmockford@pfglaw.com
          PARSONS FARNELL & GREIN, LLP
          1030 SW Morrison Street
          Portland, Oregon 97205
          Telephone No.: (503) 222-1812
          Facsimile No.: (503) 274-7979

          *Of Attorneys for Plaintiff*

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812  FAX: (503) 274-7979